MONROE, J.
In April, 1907, plaintiff returned for assessment;
■86,598.70 acres of land at $10 .....$865,987 10.000 “ “ “ “ $5 ...... 50,000
Total ....................... $915,987
On April 25th the assessor increased plaintiff’s valuation as follows;
'86,598.70 acres to $20............ $1,731,960
10.000 acres partly cut over pine at $5 ............................ 50,000
$1,781,960
On July 1st the police jury, sitting as a board of reviewers, reduced the assessment on 86,598.70 acres, from $20 to $12, an acre, so that the assessment stood:
-86,598.70 acres at $12 ......... $1,039,184.40
10,000 “ “ $5 .......... 50,000.00
$1,089,184.40
Thereafter the State Board of Equalization addressed a communication to the State Auditor, as follows:
“Baton Rouge, Louisiana, Sept. 9, 1907. “Sir: You are hereby notified that the State Board of Equalization, at its session begun on the third Tuesday in the month of July, 1907, determined upon the rates per centum stated ■below, jf addition to or deduction from the assessed value of the property listed for taxation in the parish of St. Tammany for the year 1907.
Real Estate — Lands Per centum
Add Deduct
Virgin pine — Class A........... 41
Virgin pine — Class B........... 140
Virgin pine — Class C...........
Denuded pine .................
* * * * * v
“You will, therefore, in pursuance of law, notify the assessor of said parish of —- to extend the equalized valuation of the several classes of property so listed by increasing or reducing the valuation as equalized and corrected by the parish board of review, at the rates per centum above given.”
The Auditor wrote to the assessor, inclosing copy of the communication received by him (as we infer), as follows:
“You are hereby notified, as required by section 5 of Act 182 of 1906, that you extend the equalized valuation of the several classes of property in your parish as indicated by the above table of per centum of increase or decrease, established by the State Board of Equalization at its session begun on the third Tuesday in July, 1907.”
Up to the time that the assessor received the above-quoted communication, he had never heard of any such classification as that to which it refers. He, however, proceeded upon the assumption that the 89,598.70 acres assessed to plaintiff belonged to the class, the assessment upon which should be increased 41 per cent., and that the 10,000 acres belonged to a class the assessment upon which should remain as it was; i. e., at $5 an acre. On September 15th, therefore, he wrote to plaintiff’s attorney:
“I beg to advise you that the State Board of Equalization has raised the assessment of the Great Southern Lumber Company from $12, originally fixed by the board of reviewers of the parish of St. Tammany, to $16.92 per acre. This only is on virgin timber lands of pine.”
What the Board of Equalization meant, however, may be gathered from the following excerpt from the report of its committee on equalization of timber lands made and acted on at a meeting of the board during *1051 the latter part of the month of August, to wit:
“In equalizing the assessment on pine lands, we have classified the same in three classes. That is, all lands which will cut as much as 10,000 feet per acre, stumpage, or more, as class A, and fixed the assessment valuation, as equalized, at $17.00 an acre. All pine lands that will cut as much as 5,000, and’ not more than 10,000, feet, stumpage, per acre, as class B, and fixed the assessed valuation, as equalized, at $12 per acre. All pine lands that will' not cut as much as 5,000 feet stumpage, we place in class C, and fix the assessed valuation of the same, as equalized, at $5 an acre. Denuded pine lands we recommend be fixed, for purpose of equalization, at the same value as now fixed by the several assessors throughout the state.”
It is very clear that, after the board of reviewers had acted upon the assessment (if not before that time), the power of the assessor had been exhausted, and that he could lawfully have taken further action only in the event of his obtaining further power from competent authority, and then only in the manner and to the extent authorized by the additional grant of power. That being the case, and assuming (arguendo) that it was competent for the Board of Equalization, at that time, to order the increase in valuations as directed in its letter to the Auditor, the fact remains that its instructions were not obeyed. The assessor did not know that classes A, B, and O were intended to represent lands that would cut, respectively, 10,000 feet and more, 5,000 feet and not more than 10,000 feet, and 5,000 feet and less, of stumpage; and, if he had known it, he did not know, and, save for the information offered by plaintiff (of which he -declined to avail himself), had no means of finding out what proportion of the lands in question would cut the larger amount, and what proportion the smaller. He was not even guessing, for he did not know that there was a riddle; and, if he had suspected anything of the kind, he would not have known whether his answer was right or wrong, How or why the Auditor or the assessor should have been expected to know what the-Board of Equalization meant by its classification the record does not disclose. But’, it does show that the assessor, being unenlightened upon the subject, did not understand his instructions, did not act on them, or in line with them, and hence that the action taken by him was unauthorized and illegal. Our conclusion on reconsidering the-case, then, is that the attempt of the Board of Equalization to change the valuation placed upon plaintiff’s property by the board of reviewers having miscarried the assessment and valuation made by the last-mentioned board is left undisturbed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be-avoided and reversed, and that there be judgment in favor of the plaintiff decreeing the-increase in the valuation of its property herein complained of to be unauthorized, null, and void, and prohibiting and restraining the defendant, sheriff, and ex officio tax collector from further proceeding to enforce the payment of any tax based thereon. It is-further decreed that defendants pay all costs.
See concurring opinion of PROYOSTY, J.,. 58 South. 876; and dissenting opinion of BREAUX, O. J., 58 South. 877.